

Brian J. Markowitz
(646) 768-4127
bmarkowitz@GoldsteinHall.com

February 10, 2021

**VIA PACER**
HON. JIL MAZER-MARINO
United States Bankruptcy Judge
United States Bankruptcy Court
Eastern District of New York
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

Re: FMTB BH LLC, Debtor (18-42228-jmm)
FMTB BH LLC v. 1988 Morris Avenue LLC et al. (Adv. Pro. # 18-01052-jmm)

Honorable Judge Mazer-Marino:

As your Honor may recall, this office represents 1821 Topping Ave LLC (incorrectly sued herein as 1821 Topping Avenue LLC), ("Topping") one of the Defendants in the above referenced adversary proceeding. This letter is being sent at Your Honor's direction regarding the Defendant's position regarding the return of the down payments received

This action arises out of Debtor as purchaser ("Debtor" or "Purchaser") entering into five separate contracts of sale, as follows: (1) to purchase 1988 Morris Avenue, Bronx, NY from 1988 Morris Ave LLC; (2) to purchase 1974 Morris Avenue, Bronx, NY from 1974 Morris Ave LLC; (3) to purchase 700 Beck Street, Bronx, NY from 770 Beck Street LLC; (4) to purchase 1143 Forest Avenue, Bronx, NY from 1143 Forest Ave LLC; and (5) to purchase 1821 Topping Avenue, Bronx, NY (the Topping Property") from 1821 Topping Ave LLC .

On June 19, 2017, fully executed copies of the five Contracts of Sale for the five properties were exchanged. Each individual Contract for Sale were signed by Ihsan Saleem on behalf of the Sellers, and Izidor Mikhli, attorney for the Purchaser. Closing was set for "on or about sixty days from receipt of fully executed contracts". A copy of the 1821 Topping Ave Contract for Sale, along with the accompany Rider is annexed hereto as Exhibit "A" submitted herewith. With respect to the Topping property, the Contract for Sale called for the deposit of $34,444.44.

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

New York City
80 Broad Street, Suite 303
New York, NY 10004
646.768.4100

Albany
90 State Street, Suite 700
Albany, NY 12207
518.992.3245

New Rochelle
271 North Avenue, Suite 310
New Rochelle, NY 10801
914.380.8793

Washington, D.C.
2201 Wisconsin Ave, NW, Suite 200
Washington, D.C. 20007
202.656.6136




Client Focused. Results Driven.

On August 22, 2017, following the initial 60-day closing period set forth in the Contract for Sale, Sellers' then attorney sent the first Time of Essence Letter, setting a Time of the Essence closing date for each property for September 14, 2017. Due to no fault of the Sellers, Debtor failed to close on or before September 14, 2017. Indeed, as of September 27, 2017, Debtor had failed to agree to schedule a closing. By letter dated September 27, 2017, Seller's then attorney sent the second Time of the Essence letter, stating that Debtor has failed to close on or before the Time of the Essence date and setting October 2, 2017 as the new Time of the Essence date. Copies of the two Time of the Essence Closing Letters are collectively annexed hereto as Exhibit "B". Due to no fault of the Sellers, Purchaser failed to close on or before October 2, 2017.

Instead of closing on the Properties, and after the October 2, 2017 Time of the Essence closing date, on October 4, 2017, while Purchaser was already in default of Contracts of Sale and therefore had already forfeited their entitlement to the down payment, Plaintiff and the Defendants entered into Addendum Agreements, agreeing to:

a  that as consideration for entering into a new Time of the Essence closing, that the entire down payment for each Property was to be released to each of the Sellers immediately;

b  access to the properties by Purchaser to make certain alterations and improvements, pursuant to a separate "Access Agreement" to be entered into between Purchaser and each Sellet;

c  a final Time of the Essence closing date of December 18, 2017;

d  an additional $169,000.00 down payment to be paid by Debtor to each of the Sellers to be applied toward each Contract;

e  the immediate release to the Sellers of the additional deposit amounts by wiring proceeds directly to Sellers rather than to an escrow account;

f  with respect to 1988 Morris Avenue LLC and 1821 Topping Avenue LLC, Debtor agreed to pay the monthly mortgage interest for those two properties, from execution of the Addendum to the closing date;

g  Sellers agreed to enter into lease agreements with tenants selected by Debtor, provided lease commencement dates begin after the closing date. Leases shall be conditioned upon and only effective if Debtor closes on the property.

A copy of the Addendum for Topping is annexed hereto as Exhibit "C".

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

| New York City | Albany | New Rochelle | Washington, D.C. |
|---|---|---|---|
| 80 Broad Street, Suite 303 | 90 State Street, Suite 700 | 271 North Avenue, Suite 310 | 2201 Wisconsin Ave, NW, Suite 200 |
| New York, NY 10004 | Albany, NY 12207 | New Rochelle, NY 10801 | Washington, D.C. 20007 |
| 646.768.4100 | 518.992.3245 | 914.380.8793 | 202.656.6136 |



The closing of the five properties never occurred, and thereafter the Purchaser filed for Chapter 11, and commenced Bankruptcy Adversary Proceeding, asserting three causes of action: (i) The first cause of action sought specific performance for breach of contract, alleging that none of the Defendants were ready, willing and able to close on their respective sale as anticipated by each contract of sale; (ii) The second cause of action sough, in the alternative, damages for breach of contract, seeking return of the contract deposits, additional deposits, alleged advanced payments made by the Plaintiff and attorneys' fees; and (iii) The third cause of action sought assumption of the contract agreements pursuant to section 365 of the Bankruptcy Code.

Following a two-day electronic trial of the claims in the Adversary Proceeding, the Court issued a decision and subsequent order, determining that Debtor did not breach the five individual contracts of sale by failing to appear on law day of the five separate time of the essence closings. The Court also ordered that Debtor pay to Topping the amount of $141,120.00, representing mortgage payments due to Topping which Debtor failed to make prior to the December 18, 2017 time of the essence closing date, pursuant to the terms of the Contract Addendum.

Eventually, the parties proceeded to closing on four of the five properties. With respect to the Topping property, Debtor was unwilling to take this property, as is, without an abatement to the purchase price for any outstanding violations or title defects. Accordingly, 1821 Topping Ave LLC, invoking paragraph 7 of the Rider to the Contract for Sale and terminated the Contract for Sale. Paragraph 7 of the Rider provides for the seller to the return of "all sums paid hereunder plus the net cost of title examination".

**A.     Debtor is not entitled to Return of the Down Payments**

As the evidence at the trial clearly showed, the down payments made by Debtor to Topping was released and forfeited to Topping, in consideration for extending the October 2, 2017 Time of the Essence Closing to December 18, 2017. Indeed, the testimony on this issue was completely unrefuted by Debtor.

For instance, during cross examination of Debtor's then real estate counsel, Izidor Mikhli, who was directly involved on behalf of Debtor with drafting and negotiating the Addendums to Contract, testified as follows:

> Q The time-of-the-essence letter that we just read said October 2, 2017, as the date -- of the time-of-the-essence closing date. The addendum's were signed according to their terms on October [4], 2017. That's after the closing date, correct?
>
> A Okay. Yes.

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

| New York City | Albany | New Rochelle | Washington, D.C. |
|---|---|---|---|
| 80 Broad Street, Suite 303 | 90 State Street, Suite 700 | 271 North Avenue, Suite 310 | 2201 Wisconsin Ave, NW, Suite 200 |
| New York, NY 10004 | Albany, NY 12207 | New Rochelle, NY 10801 | Washington, D.C. 20007 |
| 646.768.4100 | 518.992.3245 | 914.380.8793 | 202.656.6136 |




> Q All right. So was the consent to release the down payment in paragraph 2 -- is that in consideration for extending the time-of-the-essence closing date?
>
> A I would imagine.

Trial Transcript, Day 1, Page 100, Lines 9-18. A copy of the transcript is annexed hereto as Exhibit "D".

Mr. Mikhli further testified, with respect to the down payments and the mortgage payments:

> Q Do you know if purchaser ever made those payments?
>
> A I do not know.
>
> Q Okay. Paragraph 5. "Purchaser agrees to wire to the seller (sound drops) in additional down payments to the seller by or before (sound drops)." Do you see that?
>
> A Yes.
>
> Q Was that wired directly to the seller?
>
> A Not sure. I don't recall.
>
> Q Okay. Well, is the agreement to wire directly to the seller?
>
> A That's what it says.
>
> Q Okay. And was the reason for that to permit the purchaser -- I'm sorry -- to permit the seller to pay off and to retire some mortgage debt on the property?
>
> A I believe so.
>
> **Q Okay. And the reason that the purchaser was making those payments was in consideration for extending the TOE closing date, correct?**

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

New York City
80 Broad Street, Suite 303
New York, NY 10004
646.768.4100

Albany
90 State Street, Suite 700
Albany, NY 12207
518.992.3245

New Rochelle
271 North Avenue, Suite 310
New Rochelle, NY 10801
914.380.8793

Washington, D.C.
2201 Wisconsin Ave, NW, Suite 200
Washington, D.C. 20007
202.656.6136





Client Focused. Results Driven.

> A **I believe so.**

(Emphasis supplied.) Trial Transcript, Day 1, Page 103, Lines 4-22. In its re-direct of Mr. Mikhli, Debtor did not address the down payments and did not dispute the testimony given on cross-examination.

Further, Mr. Joseph Reigler, Debtor's principal during the underlying transaction, also testified that the down payments were used as consideration for extending the time of the essence closing date.

> Q Okay. And do you recall if that was after -- do you recall if that was after a time of the essence closing date had already been established?
>
> A Yes.
>
> **Q Okay. And in fact, the time of the essence closing date had passed already, correct?**
>
> **A Correct.**
>
> **Q So the terms of this contract here, these addendums, if you turn to Page 838, Paragraph 2. "Purchaser consents to the immediate release of a down payment held by seller in the amount of $25,833.33."[1]**
>
> **A Okay.**
>
> **Q That was (sound drops)[2] of moving the time of the essence closing date, correct?**
>
> **A Correct.**

---

[1] The amount of $25,833.33 was in reference to the Contract Addendum for the 1974 Morris property.

[2] While the transcript of the trial, which was held via Citrix WebEx, drops a word from the question, it is clear from the context that the missing words were to the effect of "in consideration" or of similar import.

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

New York City
80 Broad Street, Suite 303
New York, NY 10004
646.768.4100

Albany
90 State Street, Suite 700
Albany, NY 12207
518.992.3245

New Rochelle
271 North Avenue, Suite 310
New Rochelle, NY 10801
914.380.8793

Washington, D.C.
2201 Wisconsin Ave, NW, Suite 200
Washington, D.C. 20007
202.656.6136



> Q Okay. And the new time of the essence closing date that was agreed to between the seller and purchaser is set forth in Paragraph 4, correct?
>
> A Yes.
>
> Q And the new time of the essence closing date was going to be December 18, 2017?
>
> A Correct.
>
> Q And just to save some time here, for the remaining four properties and the remaining four addendums, your answers are going to be the same thing, correct? (sound drops) **the down payment was released in consideration for a new time of the essence closing date, and the new time of the essence closing date was agreed to by the parties as December 18, 2017?**
>
> **A Correct.**

(Emphasis supplied.) Trial Transcript, Day 1, Page 172 Line 6 – Page 173 Line 10. Clearly, Debtor's principal recognized that the down payments were released as consideration for a new time of the essence closing date being set by the parties. Again, this testimony was completely and utterly unrefuted by the Debtor during the course of the trial.

Lastly, a member of Topping, Rafael Telahun, testified as to the circumstances surrounding the down payments and their subsequent release.

> Q Okay. And was there an understanding with the Plaintiffs about what the million dollars was supposed to be used for?
>
> A That's correct, and I made it very cer -- clear and certain that I wanted the money wired directly to me and I didn't want any shenanigans about a lawsuit, about waiting for another six months, another six months, that I wanted the money now, and that they needed to close by December 18th.
>
> Q Mm hmm. And what was that money to be used for?

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

| New York City | Albany | New Rochelle | Washington, D.C. |
|---|---|---|---|
| 80 Broad Street, Suite 303 | 90 State Street, Suite 700 | 271 North Avenue, Suite 310 | 2201 Wisconsin Ave, NW, Suite 200 |
| New York, NY 10004 | Albany, NY 12207 | New Rochelle, NY 10801 | Washington, D.C. 20007 |
| 646.768.4100 | 518.992.3245 | 914.380.8793 | 202.656.6136 |



> A I used the money to pay off a portion of our mortgages.
>
> Q And, was the Plaint -- you communicate to the Plaintiffs that you were going to be doing that?
>
> A Yes, I made my intentions very clear that I had mortgages to pay, and this deal was supposed to close a long time ago, and that I'm going to use the money to pay the mortgages. **And I need the money now in order to agree to extend the TOE to December 18th.**

(Emphasis supplied.) Trial Transcript, Day 1, Page 251 Line 25 – Page 252 Line 17.  Again, the clear, unrefuted testimony showed that the down payments were released to Topping in consideration for the setting of a new time of the essence date.

Further, this has always been seller's contention, that the down payments were paid as consideration for extending the time of the essence closing date.  Indeed, at his deposition, Mr. Reigler confirmed this very idea:

> Q Is it your understanding that this $169,000 additional down payment -- put it simply, was it to be held in escrow?
>
> A No. If I remember correctly, it was used to pay off certain hard money loans that they had existing on properties. That was the reason, the rationale why they needed this money.
>
> They gave breakdowns to Izidor Mikhli then of certain hard loans that they had on the property. Because to go from two something to 145 don't make a lot of sense, four times the amount.
>
> It had a rationale that they were paying off certain loans on the properties. And because of that, they'll be willing -- it's not going to cost them money. They have nothing to lose. **They'll give us extensions**.
>
> And this is what it was used for according to what we were told was going to be done.

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com



**New York City**
80 Broad Street, Suite 303
New York, NY 10004
646.768.4100

**Albany**
90 State Street, Suite 700
Albany, NY 12207
518.992.3245

**New Rochelle**
271 North Avenue, Suite 310
New Rochelle, NY 10801
914.380.8793

**Washington, D.C.**
2201 Wisconsin Ave, NW, Suite 200
Washington, D.C. 20007
202.656.6136




(emphasis supplied.) Deposition of Joseph Reigler, March 28, 2019, Page140 Line 6 – Page 141 Line 2. A copy of the Reigler Deposition is annexed hereto as Exhibit "E".

Clearly, the testimony both at trial and during pre-trial discovery supports the fact that parties have always agreed that the release of the down payments was in consideration for the rescheduling of the time of the essence closing date, after Debtor had failed to close at several previously scheduled time of the essence closings, and after Debtor had already failed to appear at the October 2, 2017 time of the essence closing.

Lastly, Debtor has already informed this Court that it agrees to the payment of the outstanding mortgage payments in the amount of $141,120.00, a "concession" made following an express order of this Court, and as such there is no basis for Debtor to now seek its non-payment. Debtor was contractually obligated under the express, clear and unambiguous terms of the Addendum to pay the mortgage payment. Debtor failed to make these payments and this Court has held, in no uncertain terms, that those payments were due and payable on October 30, 2020. The mortgage payment is the subject of Topping's Motion to Compel before this Court. As such, we would ask this Court to direct the payment of the mortgage default payments to Topping.

Accordingly, Topping respectfully requests that this Court (i) order that 1821 Topping LLC be permitted to retain the down payments, on the grounds that the down payments were released to 1821 Topping LLC as consideration for the rescheduling of the time of the essence closing date; and (ii) direct Debtor to pay to 1821 Topping LLC the full amount of the outstanding mortgage default payments, as previously ordered by this Court, in the amount of $141,120.00, and to direct such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted,

Brian J. Markowitz

Goldstein Hall PLLC | fax: 646.219.2450 | info@goldsteinhall.com | www.goldsteinhall.com

| New York City | Albany | New Rochelle | Washington, D.C. |
|---|---|---|---|
| 80 Broad Street, Suite 303 | 90 State Street, Suite 700 | 271 North Avenue, Suite 310 | 2201 Wisconsin Ave, NW, Suite 200 |
| New York, NY 10004 | Albany, NY 12207 | New Rochelle, NY 10801 | Washington, D.C. 20007 |
| 646.768.4100 | 518.992.3245 | 914.380.8793 | 202.656.6136 |