# ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

**875 THIRD AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 603-6300**
**FAX (212) 956-2164**

February 17, 2021

Fred B. Ringel
(212) 603-6301
fbr@robinsonbrog.com

**<u>VIA ECF</u>**
The Honorable Jil Mazer-Marino
United States Bankruptcy Judge
United States Bankruptcy Court EDNY
Conrad B. Duberstein Courthouse
271 Cadman Plaza East
Brooklyn, New York 11201-1800

RE: <u>FMTB BH LLC, Debtor Chapter 11 Case No. 18-42228-jmm</u>

Dear Judge Mazer-Marino:

We represent the debtor FMTB BH LLC (the "Debtor" or "Purchaser") in its chapter 11 bankruptcy case and submit this response to the position statement (the "Seller's Position Statement") filed by 1821 Topping Ave LLC (the "Seller") [ECF Doc. No. 131] on February 10, 2021.

The Seller, without any acknowledgment,[1] has changed its position concerning how much money it is required to return to the Debtor because of its purported termination of the 1821 Topping Avenue Contract (the "Contract")[2] for the property located at 1821 Topping Avenue, Bronx, New York (the "Property"). On January 6, 2021, Seller's counsel filed a letter on the Court's docket (the "Seller's January 6th Letter") [ECF Doc. No. 125], wherein the Seller indicated its desire to terminate the

---

[1] In the Debtor's position statement filed on February 10th [ECF Doc. No. 130], it noted that its position paper superseded the status report filed on January 6, 2021[ECF Doc. No. 124]. Seller, on the other hand, ignored its prior contrary position which contradicts not only its status report but, as discussed herein, its position on the four properties it closed on with the Debtor. There, on identical contract terms, Seller gave the Debtor a credit against the purchase price for the initial down payment which had been "released" to the Seller and the additional down payment paid directly to the Seller. Thus, its present position is disingenuous at best and its contradictory treatment of the down payments on the contracts which closed are wholly unexplained and further undercut the merits of the position it is now taking.

[2] The Contract is comprised of the following: (i) the Contract of Sale, dated June 19, 2017 (the "Contract of Sale"), (ii) the Seller's Rider to Contract, dated June 19, 2017 (the "Rider"), and (iii) the Addendum to Contract, dated October 4, 2017 (the "Topping Addendum"). A copy of the Contract is attached as Exhibit A to the Debtor's February 10, 2021 position statement (the "Debtor's Position Statement").

Contract by invoking paragraph 7 of the Rider to the Contract.[3] To effectuate that termination, the Seller had to *first* return all sums paid under the Contract and the net costs of title examination. In that letter, the Seller contended that the amount to be returned to the Debtor was $27,880.00 (comprised of the additional $169,000 down payment per the Addendum[4] less the $141,120.00 Seller claims it is owed on account of section 365(b)(1)(A) cure payment due under the order dated September 30, 2020 [ECF Doc. No. 87] (the "Assumption Order").

The Seller now takes the unsupportable position that it may simultaneously exercise its right to terminate the Contract, and:

(i)     retain the Property valued at no less than $688,888.89 (based on the total contract price); [5]

(ii)    retain the Debtor's down payment of $34,444.44 (the "Initial Down Payment") paid under the Contract of Sale;

(iii)   retain the Debtor's down payment of $169,000 (the "Subsequent Down Payment") paid under paragraph 5 of the Topping Addendum;

(iv)    receive the Debtor's $141,120 cure payment, notwithstanding that Seller's purported termination is preventing the Debtor from assuming the Contract and no "Closing Date" will occur under Addendum; and

(v)     retain an unknown, unaccounted for amount of income from the Property since the Topping Addendum was executed in October 2017.

The Seller has contorted the meaning of the contract and turned it on its head. If the Seller has closed, it would have been paid the purchase price of $688,888.89 and the cure payment of $141,120. But, if it terminates the Contract with this Court's approval, it will be much better off since it retains title to the property (worth at least $688,888.89), plus it claims entitlement to the cure payment of $141,120 and the two down-payments totaling $203,222.44 for a total consideration of **$1,033,453.33** for backing out of the Contract. Under the Seller's theory, <u>although it canceled the Contract, it would</u> <u>receive all of the Contract's benefits and retain its title, while the Debtor receives nothing</u>. Yet the Debtor is obligated to continue to pay the monthly mortgage interest for the Property of $3,920.00, presumably indefinitely since the endpoint for the payments, the Closing Date, will never take place. The Court should not accept such an incredible interpretation of the Contract.

To arrive at this absurd result, the Seller (i) alters the terms of the clear and

---

[3] A copy of the Seller's January 6th Letter is attached as Exhibit B to the Debtor's Position Statement.
[4] See Exhibit A to Debtor's Position Statement, Addendum ¶5.
[5] See Contract of Sale at p. 2 §3.

unambiguous Contract to allege that the down payments released to the Seller were payments for an extension of the closing date and therefore were forfeited by the Debtor to the Seller upon release, (ii) fails to acknowledge that the down payments released by the Debtor were to be applied as credits against the Property's purchase price at closing and retained their character as "down payments" in the seller's hands and Seller points to no language in the Contract supporting their strained interpretation, (iii) asserts that the Debtor must pay the $141,120 in cure payments, although the Contract will not be assumed due to Seller's purported termination of the Contract, and (iv) ignores the Contract's merger clause.

The Seller contends that it is entitled to retain both the $34,444.44 Initial Down Payment and the $169,000 Subsequent Down Payment "on the grounds that the down payments were released to [the Seller] as consideration for rescheduling the time of the essence closing date…." Seller's Position Statement at p. 8. This contention is contrary to (i) the terms of the Contract, (ii) the application of these down payments by the parties at the January 2021 closing of the four properties with identical material[6] contract terms located at 1988 Morris Avenue, 1974 Morris Avenue, 700 Beck Street and 1143 Forest Avenue (collectively, the "Assumed Properties"), and (iii) the Contract's merger clause.

As outlined in detail in the Debtor's Position Statement, no provision in the clear and unambiguous Contract provides that the release of the down payments to Seller as consideration for rescheduling the time of the essence closing date. This fact is bolstered by the recent closing of the four Assumed Properties in January 2021where the closing statements for these Assumed Contracts show the two down payments were credits against the purchase price despite released to the Seller. Seller's treatment as these down payments as credits against the purchase price is an admission demonstrating that the Seller treated these funds as down payments and not payments for an extension of the closing date. A copy of these four closing statements is attached hereto as Exhibit B.

What the Seller did concerning the Assumed Contracts that it closed on, as opposed to its tortured litigation posture on the Topping Avenue Property, the Debtor submits, should lead the Court to the correct interpretation of this Contract. The Contract contains a simple symmetry that all real estate sales contracts contain. If the Seller closes, it gets the purchase price (which includes the two down payments) plus the cure payment of $141,420. If it terminates, the parties are put back to their original positions. The Seller retains title to its property but must return all payments made under the Contract (i.e., the

---

[6] A copy of the four signed addendums to the Assumed Contracts are attached hereto as Exhibit A. The addendums to the Assumed Contracts and the Topping Addendum are substantially the same, although there are two non-substantive and immaterial differences between paragraphs 2 and 5 of the addendums in the Assumed Contracts and the Topping Addendum. First, paragraph 2 of the addendums for 1974 Morris Avenue and 1988 Morris Avenue refer to the release of a $25,833.33 down payment rather than a $34,444.44 down payment. Second, in the Topping Addendum, the date in paragraph 5 was changed from October 17, 2017 to October 19, 2019. Neither of these minor differences impacts the analysis.

down payments, whether released or not) and is not entitled to any cure since it prevented the Debtor from assuming the Contract. The preceding interpretation is the ordinary reading of the unambiguous Contract, not the tortured and faulty construction urged by the Seller. Thus, the Initial Down Payment and Subsequent Down payment should be returned to the Debtor as a condition of its ability to terminate the Contract.

Seller claims, in support of its contention that it is entitled to retain the down payments, without any evidentiary basis whatsoever, that on October 4, 2017, the "Purchaser was already in default of [the] Contract of Sale and therefore had already forfeited their entitlement to the down payment." Seller's Position Statement at p. 2. If this statement were true, there would have been a provision in the October 4, 2017, Topping Addendum that the Purchaser was in default and forfeited its entitlement to the Initial Down Payment. There was no such provision in the Topping Addendum. Were it correct, at the very least, the Topping Addendum would not have been silent on this critical $34,444,44 issue.

Furthermore, the Seller cannot rely on the Topping Addendum's actual language to support its position. To make its argument, the Seller materially alters paragraph 2 of the Topping Addendum to insert language that does not exist. Instead of the actual language of the addendum -- "Purchaser consents to the immediate release of the down payment held by Seller in the amount of $34,444.44."-- the Seller alters the language to claim it states *"that as consideration for entering into a new Time of the Essence closing*, that the entire down payment for each Property was to be released to each of the Sellers immediately[.]" (emphasis added). Seller's Position Statement at p. 2 at ¶a. The Seller's change is materially inconsistent with the Topping Addendum's clear and unambiguous terms. It is merely fictional and must be rejected.

Similarly, the Seller alters paragraph 5 of the Topping Addendum to avoid returning the $169,000 Subsequent Down Payment. Paragraph 5 of the Topping Addendum provides that "Purchaser agrees to wire to the Seller $169,000 in additional Down payment to Seller before October 19, 2017." The Seller Position Statement invents two alleged separate obligations to try and make an argument for retaining these funds too: i) the Purchaser is to pay an additional $169,000 to each of the sellers[7] to be applied toward each contract, and (ii) the additional deposit amount should be immediately released to the sellers rather than depositing the amount in an escrow account. Seller's Position Statement at p. 2 at ¶¶ d and e. Although the Debtor agrees that the $169,000 was wired directly to the Seller, the funds were "an additional down payment," and there is no provision in the Topping Addendum that provides that wiring the $169,000 to the Seller changes its character from a "down payment" to an extension fee. First, it is absurd that the parties would have agreed to pay a $203,000 fee to extend

---

[7] Contrary to Seller's counsel's summary, the Topping Addendum only refers to the obligations of the Seller and Purchaser; it does not reference the other sellers or the Assumed Contracts.

a $688,000 contract of sale for sixty (60) days. More importantly, If the two down payments in paragraphs 2 and 5 of the Topping Addendum were meant to be non-refundable extension fees, the Topping Addendum would have so provided.  It did not.

"It is axiomatic that '[w]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations.'"  *In the Matter of Alfred J. Carracino*, 78 A.D.3d 1049 (App. Div. 2d Dept. 2010); *M & R Rockaway, LLC v. SK Rockaway Real Estate Co., LLC*, 74 A.D. 3d 759 (App. Div. 2d Dept. 2010); *United Mgmt Admin & Marketing Servs, Inc.,* 102 A.D.3d 766,767 (App. Div. 2d Dept 2013*); cf. Niagara Foods, Inc. v. Ferguson Elec. Service Co., Inc*, 111 A.D. 3d 1374, 1377 (App. Div. 4th Dept. 2013)('"Parole evidence  - evidence outside the four corners of the document – is admissible only if the court finds an ambiguity in the contract."').  As the Seller seeks to change the provisions in the Contract by introducing extrinsic evidence, "[t]he question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Trustees of the Bricklayers and Allied Craftworkers, Local 5 New York Retirement, Welfare, Apprenticeship Training and Journeyman Upgrading and Labor-Management Coalition Funds v. Charles T. Driscoll Masonry Restoration Co., Inc.,* 165 F. Supp 2d 502, 510 (S.D.N.Y. 2001) (citation omitted) ("*Trustee of Bricklayers*")  "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (citation omitted).

Here, the Rider provides, in pertinent part, that "[i]n the event that Seller chooses not to remove such violations or if the costs of removal exceed $5,000, Seller shall have the right to cancel this **contract by returning to Purchaser all sums paid hereunder plus the net cost of title examination….**" (emphasis added).  Exhibit A to Debtor's Position Statement, Rider at ¶7.  There is only one objective meaning to this provision – Seller shall return to Purchaser "all sums paid." There are no caveats, no exceptions, no references to other provisions or other agreements between the parties.

Although the Contract is clear and unambiguous, the Seller seeks to use parole evidence to support its contention that the down payments made by the Debtor were released and, as a consequence of being released, they were forfeited in consideration for extending the October 2, 2017 Time of the Essence Closing to December 18, 2017. Seller's Position Statement at p. 3.  To modify the Contract to provide what the Seller hoped it would have provided, but does not, the Seller attempts to use the prior trial testimony of Debtor's former real estate counsel Izidor Mikhli, of the Debtor's former principal Mr. Joseph Reigler[8] and a member of the Seller Rafael Telahun to demonstrate

---

[8] Seller also tried to introduce deposition testimony of Mr. Reigler.

that the down payments were forfeited to it. As discussed below, the testimony does not remotely stand for this proposition. In any event, this prior testimony should have no bearing on the Court's interpretation of the clear and unambiguous Contract. *See Trustee of Bricklayers,* 165 F. Supp 2d at 514, fn 6 (deposition testimony was extrinsic evidence and had no bearing on an unambiguous contract). c*f. Heyman v. Commerce and Industry Ins. Co.,* 524 f.2d 1317, 1320 (2d Cir. 1975) ("The parties have a right to present oral testimony or other extrinsic evidence at trial to aid in interpreting a contract whose provisions are not wholly unambiguous.")

For instance, the testimony of Izidor Mikhl, the Debtor's former real estate counsel, neither demonstrates that the Debtor forfeited both down payments to the Seller nor that the down payments lost their character as down payments because they were released.

As part of Mr. Mikhli's testimony, he was asked if the consent to release the down payment in paragraph 2 was in consideration for extending the time of the essence closing date. Seller's Position Statement at p. 4. As an initial matter, the question is unclear as to which property the question relates to. Notwithstanding that the question is unclear and is parole evidence, Debtor's counsel's response "I would imagine" is equivocal, not a definitive answer, and does not address the issue as to whether the down payment was forfeited to the Seller. Even if the question relates to the Topping Addendum, paragraph 2 refers only to the $34,444.44 Initial Down Payment and not to the $169,000 Subsequent Down Payment.

Moreover, if the down payment release were consideration that was forfeited (which it was not), then the down payments for the Assumed Contracts would not have been applied as credits against the purchase price of the Assumed Contracts (which they were).[9] All of these questions do nothing more than establishing that the Initial Down Payment and Subsequent Down Payment were being released to Seller rather than being held in escrow. More importantly, they are inadmissible extrinsic evidence irrelevant to the construction of the documents before the Court.

The Seller also seeks to use the testimony of the Debtor's former principal Joseph Reigler to support its contention that the down payments were used as consideration for extending the time of the essence closing date. This issue was not even before the Court at the trial. Sellers' Position Statement at pp. 5-6. Mr. Reigler's testimony does not reflect that the down payments are anything other than a contract deposit to be repaid if the Contract was canceled.

The Seller seeks to use the self-serving inadmissible hearsay testimony of its

---

[9] See Exhibit B hereto.

principal, Mr. Rafael Telahun, to support its contention that the down payments were used as consideration for extending the time of the essence closing date. Seller's Position Statement at pp 6-7. This extrinsic evidence is not admissible to alter the terms of the Contract, and even if it was admissible, it did not answer the question as to whether the down payment was forfeited to the Seller. All Mr. Telahun's testimony supports is that the two down payments were to be released immediately, a fact which is not in dispute. His testimony is singularly unhelpful to the issue before this Court, the construction of the Contract.

None of the prior testimony outlined in the Seller's Position Statement supports the Seller's contention that the down payments did not retain their character as down payments in Seller's hands and were not to be returned to the Purchaser if the Seller canceled the Contract. Although Seller asserts that the testimony of the Debtor and its counsel were not disputed on cross-examination, the Seller fails to acknowledge that the trial issues were different than those currently before the Court. At the prior trial between the parties, there was no issue of the down payments' character after the funds were paid to the Seller.

Moreover, any oral understating that the Seller believes entitled it to the down payments is inadmissible because the Contract contained a merger clause. Section 28(a) of the Contract of Sale provides:

> All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

Contract of Sale, ¶28(a), Exhibit A to Debtor's Position Statement. The Contract of Sale further provides that it nor any provisions thereof may be "waived, changed, or cancelled [sic] except in writing." Contract of Sale, ¶28(b), Exhibit A to Debtor's Position Statement. The Topping Addendum also provides that "[a]s hereby amended, the terms of the Contract are hereby verified and confirmed in all respects." Topping Addendum, ¶8, Exhibit A to Debtor's Position Statement. Thus, all prior understandings, agreements, representations, or warranties not set forth in the Contract must be excluded.

A review of the Contract reveals that there is no provision in the Topping Addendum (or anywhere else in the Contract) where the Debtor (i) was to forfeit its two contracts deposits if the Seller canceled the Contract and decided not to sell the Property to the Purchaser, or (ii) released the two down payments as consideration for an extension of the closing date. If the parties intended that the Debtor was to release the down payments and thereby forfeit over $200,000, that language would have been included in

the Topping Addendum. It was not. Thus, the Topping Addendum does not support the Seller's contention that it does not have to return the down payments.

Finally, the Seller contends that since the Debtor agreed to make the $141,120 cure amount payment, there is no basis for the Debtor not to pay it. Both parties have crystalized their positions since their status reports were submitted to the Court on January 6th. Compare Seller's January 6th Letter (Seller contended that amount to be returned to Debtor was $27,880) with Seller's Position Statement (no money is to be returned to Debtor). After completing its research and being requested by the Court to set forth its legal position in this position statement, the Debtor determined that it is not obligated to make the $141,120 cure payments because the Seller terminated the Contract. The Seller has determined there will be no assumption of the Contract and closing on the Property. The $141,120 cure payment was to be paid only if the Contract was assumed under section 365 of the Bankruptcy Code, which is not.

## Conclusion

The Seller's contention that it is entitled to all of the Contract's benefits and none of its burdens is an improper and inappropriate reading of the Contract. Seller's position that it can cancel the Contract, retain title to the property with a purchase price of $688,888.89, and also receive the $34,444,44 Initial Down Payment, the $169,000 Subsequent Down Payment, and the $141,120 in cure payments for the Topping Property is the ultimate "head's I win, tails you lose" proposition and is inconsistent with paragraph 7 of the Rider that requires the Seller return to Purchaser "all sums paid hereunder" to effectively cancel its contractual obligations. It is only after such repayment to Purchaser that the contract is deemed null and void.[10] Seller's construction simply turns the contract on its head.

There is no admissible evidence that the Debtor has forfeited its two down payments to the Seller. The Court should reject the Seller's attempt to introduce extrinsic evidence to construe the Contract in a way that does violence to its clear and unambiguous meaning. The Debtor respectfully requests that the Court (i) direct the Seller to pay the $34,444.44 Initial Down Payment and $169,000 Subsequent Down Payment to the Debtor, (ii) authorize the Debtor to retain the $141,120 in cure payments because the Property is not being assumed and no closing on the sale of the Property will occur, (iii) require Seller to pay the Debtor the net cost of title examination, (iv) direct that the Debtor is no longer required to make monthly payments under the Topping

---

[10] For the Seller to cancel the Contract, it must *first* return to Purchaser "all sums paid" plus title examination costs. No language in the Contract can be construed to mean that "all sums paid" does not actually mean "all sums paid."

Addendum and the Assumption Order, and (v) grant such other relief as the Court deems just and proper under these circumstances.

Respectfully submitted,

*/s/ Fred B. Ringel*

**Fred B. Ringel**

cc:    Brian Markowitz, Esq. (via email)
       Joseph Zelmanovitz, Esq (via email)

# EXHIBIT A

# ADDENDUM TO CONTRACT

**THIS ADDENDUM TO CONTRACT** ("Addendum") is made and entered into as of the 4th day of October, 2017 by and between 700 Beck Street LLC ("Seller") and FMTB BH LLC ("Purchaser").

## WITNESSETH:

**WHEREAS**, Seller and Purchaser entered into a Contract of Sale dated June 19, 2017 ("Contract") for the purchase and sale of real property located at 700 Beck Street,, Bronx, New York 10455("Property"); and

**WHEREAS,** Seller and Purchaser now desire to amend the Contract to release the escrow deposit, add additional deposit, provide for access to the Property, amongst other things;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Defined terms, used but not defined herein, shall have the respective meanings ascribed to such terms as in the Contract.

2. Purchaser consents to the immediate release of the Downpayment held by Seller in the amount of $34,444.44.

3. Seller will be granted access to the Property to make alterations and improvements. Purchaser's access shall be detailed in a separate Access Agreement mutually agreed upon between Seller and Purchaser.

4. Seller and Purchaser agree to set a Time is of the Essence closing date of December 18, 2017 ("TOE Closing Date").

5. Purchaser agrees to wire to the Seller $169,000.00 in additional Downpayment to Seller by or before October 17, 2017.

6. Purchaser agrees to pay monthly mortgage interest for the Property in the amount of $_____ from execution of this Agreement to Closing Date.

7. Seller agrees to enter into lease agreements with tenants selected by Purchaser provided lease commencement dates begin after the Closing Date. Leases shall be conditioned upon and only effective Purchaser closes on the property.

8. As hereby amended, the terms of the Contract are hereby verified and confirmed in all respects.

9. This Addendum may be executed by the undersigned in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. In addition, faxed or emailed signatures will be deemed originals for the purposes of this Agreement.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Purchaser and Seller have each executed this First Addendum to Contact as of the date first written above.

Seller:

700 BECK STREET LLC

By: _____

Purchaser:

FMTB BH LLC

By: _____

## ADDENDUM TO CONTRACT

**THIS ADDENDUM TO CONTRACT** ("Addendum") is made and entered into as of the 4th day of October, 2017 by and between 1988 Morris Avenue LLC ("Seller") and FMTB BH LLC ("Purchaser").

## WITNESSETH:

**WHEREAS**, Seller and Purchaser entered into a Contract of Sale dated June 19, 2017 ("Contract") for the purchase and sale of real property located at 1988 Morris Avenue, Bronx, New York 10455("Property"); and

**WHEREAS**, Seller and Purchaser now desire to amend the Contract to release the escrow deposit, add additional deposit, provide for access to the Property, amongst other things;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Defined terms, used but not defined herein, shall have the respective meanings ascribed to such terms as in the Contract.

2.    Purchaser consents to the immediate release of the Downpayment held by Seller in the amount of $25,833.33.

3.    Seller will be granted access to the Property to make alterations and improvements. Purchaser's access shall be detailed in a separate Access Agreement mutually agreed upon between Seller and Purchaser.

4.    Seller and Purchaser agree to set a Time is of the Essence closing date of December 18, 2017 ("TOE Closing Date").

5.    Purchaser agrees to wire to the Seller $169,000.00 in additional Downpayment to Seller by or before October 17, 2017.

6.    Purchaser agrees to pay monthly mortgage interest for the Property in the amount of $_____ from execution of this Agreement to Closing Date.

7.    Seller agrees to enter into lease agreements with tenants selected by Purchaser provided lease commencement dates begin after the Closing Date. Leases shall be conditioned upon and only effective Purchaser closes on the property.

8.    As hereby amended, the terms of the Contract are hereby verified and confirmed in all respects.

9.    This Addendum may be executed by the undersigned in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. In addition, faxed or emailed signatures will be deemed originals for the purposes of this Agreement.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Purchaser and Seller have each executed this First Addendum to Contact as of the date first written above.

Seller:

1988 MORRIS AVE LLC

By: _____

Purchaser:

FMTB BH LLC

By: _____

## ADDENDUM TO CONTRACT

**THIS ADDENDUM TO CONTRACT** ("Addendum") is made and entered into as of the 4th day of October, 2017 by and between 1143 FOREST AVENUE LLC ("Seller") and FMTB BH LLC ("Purchaser").

## WITNESSETH:

**WHEREAS**, Seller and Purchaser entered into a Contract of Sale dated June 19, 2017 ("Contract") for the purchase and sale of real property located at 1143 Forest Avenue, Bronx, New York 10455 ("Property"); and

**WHEREAS,** Seller and Purchaser now desire to amend the Contract to release the escrow deposit, add additional deposit, provide for access to the Property, amongst other things;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Defined terms, used but not defined herein, shall have the respective meanings ascribed to such terms as in the Contract.

2. Purchaser consents to the immediate release of the Downpayment held by Seller in the amount of $34,444.44.

3. Seller will be granted access to the Property to make alterations and improvements. Purchaser's access shall be detailed in a separate Access Agreement mutually agreed upon between Seller and Purchaser.

4. Seller and Purchaser agree to set a Time is of the Essence closing date of December 18, 2017 ("TOE Closing Date").

5. Purchaser agrees to wire to the Seller $169,000.00 in additional Downpayment to Seller by or before October 17, 2017.

6. Purchaser agrees to pay monthly mortgage interest for the Property in the amount of $_____ from execution of this Agreement to Closing Date.

7. Seller agrees to enter into lease agreements with tenants selected by Purchaser provided lease commencement dates begin after the Closing Date. Leases shall be conditioned upon and only effective Purchaser closes on the property.

8. As hereby amended, the terms of the Contract are hereby verified and confirmed in all respects.

9. This Addendum may be executed by the undersigned in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. In addition, faxed or emailed signatures will be deemed originals for the purposes of this Agreement.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Purchaser and Seller have each executed this First Addendum to Contact as of the date first written above.

Seller:                                                    Purchaser:

1143 FOREST AVENUE LLC                    FMTB BH LLC

By: _____        By: _____

## ADDENDUM TO CONTRACT

**THIS ADDENDUM TO CONTRACT** ("Addendum") is made and entered into as of the 4th day of October, 2017 by and between 1974 MORRIS AVE LLC ("Seller") and FMTB BH LLC ("Purchaser").

## WITNESSETH:

**WHEREAS**, Seller and Purchaser entered into a Contract of Sale dated June 19, 2017 ("Contract") for the purchase and sale of real property located at 1974 Morris Avenue, Bronx, New York 10455 ("Property"); and

**WHEREAS,** Seller and Purchaser now desire to amend the Contract to release the escrow deposit, add additional deposit, provide for access to the Property, amongst other things;

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Defined terms, used but not defined herein, shall have the respective meanings ascribed to such terms as in the Contract.

2. Purchaser consents to the immediate release of the Downpayment held by Seller in the amount of $25,833.33.

3. Seller will be granted access to the Property to make alterations and improvements. Purchaser's access shall be detailed in a separate Access Agreement mutually agreed upon between Seller and Purchaser.

4. Seller and Purchaser agree to set a Time is of the Essence closing date of December 18, 2017 ("TOE Closing Date").

5. Purchaser agrees to wire to the Seller $169,000.00 in additional Downpayment to Seller by or before October 17, 2017.

6. Purchaser agrees to pay monthly mortgage interest for the Property in the amount of $_____ from execution of this Agreement to Closing Date.

7. Seller agrees to enter into lease agreements with tenants selected by Purchaser provided lease commencement dates begin after the Closing Date. Leases shall be conditioned upon and only effective Purchaser closes on the property.

8. As hereby amended, the terms of the Contract are hereby verified and confirmed in all respects.

9. This Addendum may be executed by the undersigned in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument. In addition, faxed or emailed signatures will be deemed originals for the purposes of this Agreement.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, Purchaser and Seller have each executed this First Addendum to Contact as of the date first written above.

Seller:

1974 MORRIS AVE LLC

By: _____

Purchaser:

FMTB BH LLC

By: _____

# EXHIBIT B

## GOLDSTEIN HALL PLLC
**Attorneys at Law**
**80 Broad Street, Suite 303**
**New York, NY 10004**

**Tel: (646) 768-4103**
**Fax: (646) 219-2450**


RE:                     770 Beck Street
                          Bronx, New York 10455

**DATE OF CLOSING:**        **January 28, 2021**
**PLACE OF CLOSING:**       **BY MAIL**
                          **RIVERSIDE ABSTRACT LLC, AS ESCROW AGENT**

SELLER(S):             700 Beck Street LLC

ATTORNEY FOR SELLER(S):    Brian Hsu, Esq.
                          Goldstein Hall PLLC

PURCHASER(S):         FMTB BH LLC

ATTORNEY FOR PURCHASER(S):   Abraham Weisel, Esq.
                          4309 13th Avenue, Suite 200
                          Brooklyn, New York 11219

TITLE COMPANY:        Riverside Abstract LLC
                          Title #: RANY-27281

## CLOSING STATEMENT

1. **AMOUNT DUE TO SELLER:**

Purchase Price                                                                                    $688,888.89

Tax Adjustment:
    Quarterly Payment:        $855.05                                                        $684.04
    Adjustment Period:         1/1/21          to    3/31/2021    (90 days)
    Number of days:            72               at    $9.50

Violations Credit to Seller (See Below)                                                $504.12

    *TOTAL DUE SELLER:*                                                        <u>$690,077.05</u>


2. **AMOUNT CREDITED TO PURCHASER:**

Initial Deposit                                                                                       $34,444.44
Additional Deposit                                                                               $169,000.00
Property Disclosure Condition Credit                                                     $500.00

    *TOTAL CREDITS TO PURCHASER:*                                   <u>$203,944.44</u>

**TOTAL DUE TO SELLER**                                                          <u>$486,132.61</u>

**The "Total Due to Seller" will be paid by the following parties as follows:**

3. **WIRE FROM THE PURCHASER:**

| | | |
|---|---|---|
| a.  Falcon RE19 FundingCo LLC | Mortgage Payoff | $449,098.44 |
| b.  Riverside Abstract LLC | See Below | $34,034.17 |
| c.  Goldstein Hall PLLC | Seller's Legal Fee | $3,000.00 |

TOTAL                                                                                               $486,132.61

## BREAKDOWN OF TITLE BILL

| Description | Amount |
|---|---|
| NYC Transfer Tax | $9,816.67 |
| NYS Transfer Tax | $2,756.00 |
| Open Real Estate Taxes | $6,525.84 |
| Open Water Charges | $13,500.46 |
| Partial Release of ALR | $195.00 |
| Partial Release of Mortgage | $150.00 |
| Payoff Remittance Fee | $250.00 |
| *SUB-TOTAL* | $33,193.97 |

### Violations (with 60% credit to Seller)

| Description | Amount |
|---|---|
| DOH Fees | $634.20 |
| Fire Violations | $180.00 |
| Registration Fee | $26.00 |
| *SUB-TOTAL* | $840.20 |
| **TOTAL** | **$34,034.17** |

**GOLDSTEIN HALL PLLC**
**Attorneys at Law**
**80 Broad Street, Suite 303**
**New York, NY 10004**

**Tel: (646) 768-4103**
**Fax: (646) 219-2450**

RE:                             1988 Morris Avenue
                                Bronx, New York 10455

**DATE OF CLOSING:**            **January 28, 2021**
**PLACE OF CLOSING:**           **BY MAIL**
                                **RIVERSIDE ABSTRACT LLC, AS ESCROW AGENT**

SELLER(S):                      1988 Morris Ave LLC

ATTORNEY FOR SELLER(S):         Brian Hsu, Esq.
                                Goldstein Hall PLLC

PURCHASER(S):                   FMTB BH LLC

ATTORNEY FOR PURCHASER(S):      Abraham Weisel, Esq.
                                4309 13th Avenue, Suite 200
                                Brooklyn, New York 11219

TITLE COMPANY:                  Riverside Abstract LLC
                                Title #: RANY-27281

**CLOSING STATEMENT**

1. **AMOUNT DUE TO SELLER:**

| | | | | | |
|---|---|---|---|---|---|
| Purchase Price | | | | | $516,666.67 |
| Mortgage Payments | 10/4/2017 | to | 10/4/2020 | | $106,470.00 |
| Additional Consideration | | | | | $7,840.00 |

October 2020 Mortgage Adjustment:

| | | | | | |
|---|---|---|---|---|---|
| Monthly Payment: | $2,957.50 | | | | $2,575.89 |
| Adjustment Period: | 10/5/20 | to | 10/31/2020 | | |
| Number of days: | 27 | at | $95.40 | | |

| | |
|---|---|
| November 2020 to December 2020 Mortgage Payment: | $5,915.00 |

January 2021 Mortgage Adjustment:

| | | | | | |
|---|---|---|---|---|---|
| Monthly Payment: | $2,957.50 | | | | $1,717.26 |
| Adjustment Period: | 1/1/21 | to | 1/18/2021 | | |
| Number of days: | 18 | at | $95.40 | | |

Tax Adjustment:

| | | | | | |
|---|---|---|---|---|---|
| Quarterly Payment: | $827.66 | | | | $662.13 |
| Adjustment Period: | 1/1/21 | to | 3/31/2021 | (90 days) | |
| Number of days: | 72 | at | $9.20 | | |

| | |
|---|---|
| Violations Credit to Seller (See Below) | $71.78 |
| *TOTAL DUE SELLER:* | <u>$641,918.72</u> |

2. **AMOUNT CREDITED TO PURCHASER:**

| | |
|---|---|
| Initial Deposit | $25,833.33 |
| Additional Deposit | $169,000.00 |
| Property Disclosure Condition Credit | $500.00 |
| *TOTAL CREDITS TO PURCHASER:* | <u>$195,333.33</u> |
| **TOTAL DUE TO SELLER** | $446,585.39 |

**The "Total Due to Seller" will be paid by the following parties as follows:**

3. **WIRE FROM THE PURCHASER:**

| | | |
|---|---|---|
| a. Falcon RE19 FundingCo LLC | Mortgage Payoff | $424,248.00 |
| b. Riverside Abstract LLC | See Below | $19,337.39 |
| c. Goldstein Hall PLLC | Seller's Legal Fee | $3,000.00 |
| TOTAL | | $446,585.39 |

## BREAKDOWN OF TITLE BILL

| Description | Amount |
|---|---|
| NYC Transfer Tax | $8,991.42 |
| NYS Transfer Tax | $2,524.00 |
| Open Real Estate Taxes | $6,108.55 |
| Open Water Charges | $898.79 |
| Partial Release of ALR | $195.00 |
| Partial Release of Mortgage | $150.00 |
| UCC-3 Recording Fee | $100.00 |
| Payoff Remittance Fee | $250.00 |
| *SUB-TOTAL* | $19,217.76 |

| Violations (with 60% credit to Seller) | Amount |
|---|---|
| Inspection Fee | $93.63 |
| Registration Fee | $26.00 |
| *SUB-TOTAL* | $119.63 |
| **TOTAL** | **$19,337.39** |

<div style="border:1px solid black; padding:10px; text-align:center;">

**<u>GOLDSTEIN HALL PLLC</u>**
**Attorneys at Law**
**80 Broad Street, Suite 303**
**New York, NY 10004**

**Tel: (646) 768-4103**
**Fax: (646) 219-2450**

</div>

| | |
|---|---|
| RE: | 1143 Forest Avenue |
| | Bronx, New York 10455 |

**DATE OF CLOSING:**             **January 28, 2021**
**PLACE OF CLOSING:**         **BY MAIL**
                                             **RIVERSIDE ABSTRACT LLC, AS ESCROW AGENT**

SELLER(S):                           1143 Forest Ave LLC

ATTORNEY FOR SELLER(S):         Brian Hsu, Esq.
                                             Goldstein Hall PLLC

PURCHASER(S):                      FMTB BH LLC

ATTORNEY FOR PURCHASER(S):     Abraham Weisel, Esq.
                                             4309 13th Avenue, Suite 200
                                             Brooklyn, New York 11219

TITLE COMPANY:                    Riverside Abstract LLC
                                           Title #: RANY-27281

<u>**CLOSING STATEMENT**</u>

1.   **<u>AMOUNT DUE TO SELLER:</u>**

Purchase Price                                                     $688,888.89

Tax Adjustment:

| | | | | | |
|---|---|---|---|---|---|
| Quarterly Payment: | $715.36 | | | | $572.29 |
| Adjustment Period: | 1/1/21 | to | 3/31/2021 | (90 days) | |
| Number of days: | 72 | at | $7.95 | | |

Violations Credit to Seller (See Below)               $25,054.31

    *TOTAL DUE SELLER:*                                <u>$714,515.49</u>

2.   **<u>AMOUNT CREDITED TO PURCHASER:</u>**

| | |
|---|---|
| Initial Deposit | $34,444.44 |
| Additional Deposit | $169,000.00 |
| Property Disclosure Condition Credit | $500.00 |

    *TOTAL CREDITS TO PURCHASER*                     <u>$203,944.44</u>

**TOTAL DUE TO SELLER**                              <u>$510,571.05</u>

**The "Total Due to Seller" will be paid by the following parties as follows:**

3.   **WIRE FROM THE PURCHASER:**

| | | | |
|---|---|---|---|
| a. | Falcon RE19 FundingCo LLC | Mortgage Payoff | $437,104.51 |
| b. | Riverside Abstract LLC | See Below | $70,466.54 |
| c. | Goldstein Hall PLLC | Seller's Legal Fee | $3,000.00 |

TOTAL                                                   $510,571.05

## BREAKDOWN OF TITLE BILL

| Description | Amount |
|---|---|
| NYC Transfer Tax | $9,816.67 |
| NYS Transfer Tax | $2,756.00 |
| Open Real Estate Taxes | $5,133.10 |
| Open Water Charges | $10,308.58 |
| Partial Release of ALR | $195.00 |
| Partial Release of Mortgage | $150.00 |
| UCC-3 Recording Fee | $100.00 |
| Payoff Remittance Fee | $250.00 |
| *SUB-TOTAL* | $28,709.35 |

### Violations (with 60% credit to Seller)

| | |
|---|---|
| ECB Violations | $38,988.68 |
| HPD | $2,742.51 |
| Registration Fee | $26.00 |
| *SUB-TOTAL* | $41,757.19 |
| **TOTAL** | **$70,466.54** |

**GOLDSTEIN HALL PLLC**
**Attorneys at Law**
**80 Broad Street, Suite 303**
**New York, NY 10004**

**Tel: (646) 768-4103**
**Fax: (646) 219-2450**

RE:                                          1974 Morris Avenue
                                             Bronx, New York 10455


**DATE OF CLOSING:**          **January 28, 2021**
**PLACE OF CLOSING:**         **BY MAIL**
                                             **RIVERSIDE ABSTRACT LLC, AS ESCROW AGENT**


SELLER(S):                                   1974 Morris Ave LLC

ATTORNEY FOR SELLER(S):                      Brian Hsu, Esq.
                                             Goldstein Hall PLLC


PURCHASER(S):                                FMTB BH LLC

ATTORNEY FOR PURCHASER(S):                   Abraham Weisel, Esq.
                                             4309 13th Avenue, Suite 200
                                             Brooklyn, New York 11219

TITLE COMPANY:                               Riverside Abstract LLC
                                             Title #: RANY-27281

## CLOSING STATEMENT

1. **AMOUNT DUE TO SELLER:**

   Purchase Price                                                $        516,666.67

   Tax Adjustment:
       Quarterly Payment:      $1,052.74                      $           842.19
       Adjustment Period:       1/1/21        to    3/31/2021    (90 days)
       Number of days:           72             at    $11.70

       *TOTAL DUE SELLER:*                                     $        517,508.86

2. **AMOUNT CREDITED TO PURCHASER:**

   Initial Deposit                                               $          25,833.33
   Additional Deposit                                            $        169,000.00
   Property Disclosure Condition Credit                          $              500.00

       *TOTAL CREDITS TO PURCHASER:*                           $        195,333.33

   **TOTAL DUE TO SELLER**                                       $        322,175.53

   **The "Total Due to Seller" will be paid by the following parties as follows:**

3. **WIRE FROM THE PURCHASER:**

   | | | | |
   |---|---|---|---|
   | Falcon RE19 FundingCo LLC | Mortgage Payoff | $ | 293,377.83 |
   | Riverside Abstract LLC | See Below | $ | 25,797.70 |
   | Goldstein Hall PLLC | Seller's Legal Fee | $ | 3,000.00 |

   TOTAL                                                         $        322,175.53

## BREAKDOWN OF TITLE BILL

| Description | | Amount |
|---|---|---|
| NYC Transfer Tax | $ | 7,362.50 |
| NYS Transfer Tax | $ | 2,068.00 |
| Open Real Estate Taxes | $ | 6,676.20 |
| Open Water Charges | $ | 8,996.00 |
| Partial Release of ALR | $ | 195.00 |
| Partial Release of Mortgage | $ | 150.00 |
| UCC-3 Recording Fee | $ | 100.00 |
| Payoff Remittance Fee | $ | 250.00 |
| **TOTAL** | | **$25,797.70** |